UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **J. DAVID MATTHEWS AND**<br>**SHEARWATER COMMUNITIES, LLC** | **CIVIL ACTION** |
| **VERSUS** | |
| **BANCORPSOUTH BANK, LARRY**<br>**DENISON, AND SCOTT SINGLETARY** | **NO. 09-910-D-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, January 25, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| J. DAVID MATTHEWS AND<br>SHEARWATER COMMUNITIES, LLC | CIVIL ACTION |
| VERSUS | |
| BANCORPSOUTH BANK, LARRY<br>DENISON, AND SCOTT SINGLETARY | NO. 09-910-D-M2 |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Remand (R. Doc. 4) and the related Motion for Oral Argument (R. Doc. 6) filed by plaintiff, J. David Matthews ("Matthews"). The removing defendant, BancorpSouth Bank ("BXS"), has filed an opposition (R. Doc. 5) to Matthews' motion.

## FACTS & PROCEDURAL BACKGROUND

Matthews, a resident of East Baton Rouge Parish, Louisiana, and Shearwater Communities, LLC ("Shearwater")(collectively "plaintiffs"), a Louisiana limited liability company, filed this suit against BXS, Larry Denison ("Denison"), and Scott Singletary ("Singletary") in the 19th Judicial District Court, Parish of East Baton Rouge, on September 16, 2009. In the petition, plaintiffs allege that this suit involves the defendants' improper participation with John M. Engquist, Michael A. Campesi, and Patrick O. Campesi and Old Towne Development Group, L.L.C.'s (collectively "the Old Town Principals") attempt to "freeze out" Shearwater and its manager, Matthews, from Shearwater's role and ownership position in the Americana TND development owned by New Towne Development Group, L.L.C. ("New Towne") and "personally target" Matthews for financial harm.

1

The petition and the affidavit of Matthews submitted with plaintiffs' present motion set forth the following alleged facts. Matthews and Christopher Mestayer ("Mestayer") formed Shearwater in mid-2005 with the express purpose of attaining/developing real estate in Louisiana. Shearwater created a new entity, New Towne, for the purpose of promoting/developing the Americana real estate development project in Zachary, Louisiana. In 2007, Shearwater allegedly worked on developing Americana by meeting with potential investors. The Old Towne Principals agreed to become investors in the Americana project, and in return for their capital contributions, Shearwater transferred a portion of its ownership in New Towne to the Old Towne Principals. New Towne purchased over four hundred (400) acres for the physical location of the Americana development, of which Shearwater was fifty percent (50%) owner. To effectuate that purchase, New Towne obtained a $12 million loan from BXS, which was secured by a promissory note. Matthews, Engquist, Mestayer, and the Campesis, as members of New Towne's Board of Managers, individually signed separate guarantees on the note.

Plaintiffs contend that Engquist and the Campesis subsequently engaged in a plan to seize the rights and interests of Shearwater and Matthews. Specifically, plaintiffs allege that Engquist called the minority member of Shearwater, Mestayer, and asked him to meet in secret, and at Engquist's direction, Meystayer then deceived Matthews about his plans and joined the efforts of the Old Towne Principals in harming Matthews and Shearwater by removing them from their roles as developers of the Americana project and Matthews from his role as Chairman of the New Towne Board of Directors. According to the petition, the Old Towne Principals, along with Mestayer, ultimately "froze out" Matthews and Shearwater entirely from any knowledge or input in the project.

2

In his affidavit, Matthews attests that, prior to the "freeze out," he established a plan to finance the Americana project before the renewal date on the BXS note. The Old Towne Principals, however, allegedly refused to make payments on the note and diverted and expended New Towne funds on "improper and unnecessary items." Engquist also allegedly went to BXS alone to discuss the interest payment on the note, and on August 22, 2008, Singletary, "on behalf of BXS," called a meeting of the New Towne investors to discuss the "failure" of New Towne to make timely interest payments.

According to the petition and Matthews' affidavit, during the week of September 1-5, 2008, Matthews and Dr. J. Michael Burdine, New Towne Managers, met with BXS, through Denison and Singletary. The Old Towne Principals were also present at the meeting. Plaintiffs contend that, at that meeting, Denison and Singletary advised that BXS would renew the note if the interest was made current, but the meeting adjourned without any commitment from the Old Towne Principals concerning the payment of interest.

In an effort at avoiding default, Burdine allegedly gave Matthews a check on September 5, 2008, for the specific purpose of paying interest due on the mortgage note owned by New Towne to BXS. On September 8, 2008, Matthews purportedly spoke with Denison personally and took the check to the Perkins Road branch of BXS. Matthews wrote on the back of the check that it was to be applied to the New Towne loan interest for the account of Matthews and Shearwater and gave the check to a BXS employee with the instruction that it was to be applied as a payment of the interest due on the mortgage note owed by New Towne to BXS. Matthews also attests that Denison subsequently told him that he would pull up the account number and make the interest payment on the note. Matthews further indicates that he spoke with Denison the next day, at which time Denison

3

confirmed that the funds would be applied solely to the New Towne interest.

Plaintiffs assert that, despite Matthews' restrictive endorsement and clear instructions on the check and despite the confirmation of BXS's president and BXS's "intimate knowledge of Old Towne's actions against Matthews and Shearwater," BXS deposited the check into the New Towne general checking account at BXS. Plaintiffs allege that such act violated "banking law and the clear expectations of the parties." Plaintiffs further contend that Singletary sought the guidance of Ashley Moore ("Moore"), counsel for the Old Towne Principals, on October 3, 2008 regarding the deposit of funds. Plaintiffs contend that Moore directed Singletary to leave the money in the New Towne checking account, against the express wishes of the maker of the check who indicated that the funds were to be applied against the New Towne note.

Plaintiffs also contend that, on numerous occasions between September 10, 2008 and early January 2009, Matthews inquired of Singletary as to whether the loan interest payment was properly applied, and Singletary told Matthews that, since he was no longer authorized on the account, he could not see the account or be informed as to whether the funds were applied as directed. Plaintiffs point out, however, that such information was nevertheless given to Moore, who likewise was not authorized on the account. Plaintiffs also assert that Matthews became aware in January 2009, via discovery in related litigation, that the interest payment was placed in the New Towne account.

Plaintiffs allege that, instead of paying the interest payments due on the note, the Old Towne Principals "recklessly and intentionally mismanaged New Towne funds" by: (1) purchasing a judgment on property adjacent to New Towne land in the late Summer of 2008, using $345,000.00 of New Towne funds; (2) purchasing additional land not critical

to the Americana development for an amount in excess of $80,000.00; (3) using New Towne funds to pay the legal bills of Mestayer, whose interests were adverse to those of the plaintiffs; and (4) spending development fees, despite having already initiated foreclosure proceedings, to develop Americana for Old Towne's benefit.  Plaintiffs contend that such "wasteful spending was designed to force New Towne to default upon the note."

According to plaintiffs, on September 22, 2008, BXS, through Singletary, demanded the New Towne Note be paid or proposals be submitted including a short timeline for payment by New Towne.  When neither of those requests were accomplished, the New Towne note was placed in default.  Through documents dated September 26, 2008, BXS assigned the New Towne note to Old Towne and its principals in what plaintiffs have labeled an "atypical business transaction."  Through those documents, BXS purportedly assigned its rights and interest in the New Towne note to Old Towne.  In exchange for the note, Old Towne obligated itself to BXS for the $12 million dollar debt.  That new debt of Old Towne was guaranteed by the Old Towne Principals.  Plaintiffs contend that such Old Towne note contained "questionable indemnity language," suggesting that BXS was aware of Old Towne's attempt to "freeze out" Matthews and Shearwater.

Finally, plaintiffs contend that a series of events following the execution of the Old Towne note "further establishes that th[e] transaction was far from typical."  Specifically, plaintiffs allege:  (1) BXS took no action against the Old Towne Principals when they failed to pay property taxes on the land that secured their obligation; and (2) Old Towne overtly violated key provisions of the loan agreement, but BXS, through Denison and Singletary,

5

ignored those violations because of their decision to join forces with Old Towne.[1]

In this suit, plaintiffs contend that BXS is liable for a civil conspiracy in violation of La. Civ. C. art. 2324(A) because it aided and abetted the Old Towne Principals in: (1) intentionally and fraudulently harming their interests; (2) acting in an *ultra vires* manner beyond any reasonable scope of corporate authority; (3) acting to intentionally place the New Towne note in default; (4) committing the intentional tort of conversion; (5) acting under pretextual reasons to remove Shearwater and Matthews from their role as developer of the Americana project; and (6) otherwise acting jointly to intentionally and fraudulently destroy the interests of Shearwater and Matthews in the Americana project.

As to Denison and Singletary, plaintiffs contend that they are personally liable as a result of their participation in the "reckless, intentional, and *ultra vires* actions of the Old Towne Principals." Specifically, plaintiffs allege that Denison and Singletary violated their "undelegated, personal duty [of good faith and fair dealing to plaintiffs] by assisting, aiding, participating and/or being involved in a conspiracy to: (1) destroy all rights and interests of [p]laintiffs in the Americana development; (2) intentionally cause a default upon a promissory note when default was unnecessary and easily avoidable; (3) purchase the promissory note to promote improper self interests; and (4) improperly and in bad faith

---

[1] Plaintiffs assert that, originally, there were five guarantors on the New Towne note, Matthews, Mestayer, Engquist and the Campesis. The Old Towne Principals, however, released themselves and Mestayer from their guarantees under that note and then sued Matthews on April 17, 2009, alleging that he is the sole remaining guarantor on that note. Plaintiffs contend that BXS was well-aware of the release of the Old Towne Principals, which is a violation of the loan agreement with Old Towne, but BXS took no action against Old Towne or its principals. Matthews further indicates that he has made repeated attempts to discuss this matter with BXS to no avail. Plaintiffs therefore contend that BXS, Denison, and Singletary "joined and/or facilitated the plan of the Old Towne Principals to destroy the rights of Shearwater and Matthews."

move to enforce the promissory note against Matthews."[2]

On October 22, 2009, BXS removed the present case to this Court on the basis of diversity jurisdiction, asserting that Denison and Singletary were improperly joined as defendants. Matthews has now filed the present motion, seeking remand to state court on the ground that joinder of Denison and Singletary was proper because Louisiana law recognizes an independent cause of action against an employee, director, or officer of a company for a breach of a personal duty owed to a plaintiff as outlined by the Louisiana Supreme Court in *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973) and as applied by the U.S. Fifth Circuit Court of Appeals in *In re Exxon Chemical Fire*, 558 F.3d 378 (5th Cir. 2/4/09). In addition to remand, Matthews seeks an award of the attorney's fees and costs that he incurred in bringing the present motion.

## **LAW & ANALYSIS**

As mentioned above, BXS contends that complete diversity of citizenship exists in this matter because the non-diverse defendants, Denison and Singletary, have been improperly joined, and their citizenship should therefore be ignored in determining whether this Court has subject matter jurisdiction.[3] A removing party attempting to prove improper

---

[2] In sum, plaintiffs contend that Denison and Singletary ignored the restrictive endorsement on the check that was supposed to be applied to interest on the New Towne note and directed the amount to be deposited in the New Towne general checking account, and as a result, the money was recklessly spent by the Old Towne Principals, the interest due on the promissory note went unpaid, and New Towne defaulted on the note. The note was then allegedly purchased by Old Towne, when they released all other guarantors and sought payment solely from Matthews through a related suit in this Court.

[3] There is no dispute between the parties as to whether the other element required for diversity jurisdiction, *i.e.*, the requisite amount in controversy ($75,000.00, exclusive of interest and costs), exists in this matter. Thus, the Court only discusses the

joinder carries a heavy burden. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, there is no improper joinder. *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003).[4] In determining whether there is an arguably reasonable basis for the plaintiff's claims, a district court must resolve any contested issues of material fact and any ambiguity or uncertainty in the controlling state law in the plaintiff's favor. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). If there is any possibility the plaintiff has stated a cause of action against any non-diverse defendant, the court must conclude that joinder is proper, thereby defeating diversity and requiring the case to be remanded. *Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).

The U.S. Fifth Circuit Court of Appeals has recognized that a court may determine whether a plaintiff has a reasonable basis of recovery under state law in one of two ways. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). A court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations in the complaint to determine whether the complaint states a claim under state law against the in-state defendant.[5] Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, improper joinder

---

complete diversity of citizenship element herein.

[4] This does not mean that any mere theoretical possibility of recovery, no matter how remote or fanciful, prevents removal. *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286, n. 4. To preclude a finding of fraudulent joinder, the basis for recovery must at least be arguably reasonable. *Id.*

[5] When reviewing a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court "must accept all well pleaded averments as true and view them in the light most favorable to the plaintiff. [The court] will not go outside the pleadings and . . . cannot uphold the

8

does not exist. However, there are cases, where a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, and in such cases, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry by examining outside evidence.[6]  *Id.*; *McDonald v. Abbott Laboratories*, 2005 WL 957142, * 4, n. 6 (5th Cir. 2005).

As discussed above, plaintiffs contend that there is an arguably reasonable basis for predicting that state law might impose liability upon Denison and Singletary under the facts involved in this case. The state law upon which plaintiffs rely is set forth in *Canter v. Koehring*, wherein the Louisiana Supreme Court held that an officer, agent, or employee can only be held personally liable for injuries to third persons where: (1) the employer owed a duty of care to the third person, breach of which caused the damage for which recovery is sought; (2) that duty was delegated by the employer to the employee; (3) the employee breached his duty through personal (not technical or vicarious) fault; and (4) the employee had a personal duty toward the injured third party, the breach of which specifically caused the third party's damages. *Canter*, at 721. The U.S. Fifth Circuit Court of Appeals, however, has repeatedly recognized that *Canter* liability to third persons for the acts or omissions of corporate officers and employees may only be imposed for bodily

---

dismissal 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Hernandez v. Maxwell*, 905 F.2d 94, 96 (5th Cir. 1990).

[6] Under a summary judgment-type inquiry, a court is to "pierce the pleadings to determine whether, under controlling state law, the non-moving party has a valid claim against the non-diverse parties." *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004).

9

injury claims.[7]  Because this case does not involve a claim for bodily injury, plaintiffs have no reasonable possibility of recovering from Singletary and Denison under *Canter.*

Furthermore, under Louisiana law, a corporate officer/director, like Singletary and Denison, acting on behalf of a corporation and within the scope of his/her duties is not liable to third parties in a commercial context, except in cases of fraud or intentional interference with a contract.[8] [9]  All of the plaintiffs' allegations concerning Denison and Singletary relate

---

[7] *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510 (5th Cir. 2009)(holding that, because the only injury alleged in the plaintiff's petition was economic and emotional-damage to its property and various forms of mental distress, the plaintiff would not have a basis for recovery against the defendant under Louisiana law as it has been interpreted in this circuit), citing *Unimobil, 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) and *Hibernia Cmty. Dev. Corp., Inc. v. U.S.E. Cmty. Servs. Group, Inc.*, 166 F.Supp.2d 511, 515 (E.D.La. 2001)(applying the bodily injury distinction announced in *Unimobil*); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D.La. 2008)(Louisiana lower courts and the U.S. Fifth Circuit Court of Appeals have held that officer liability under *Canter* is limited to cases of physical injury).

[8] *See, Grimaldi Const., Inc. v. Robinson*, 1997 WL 191494 (E.D.La. 1997), citing *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 215 (5th Cir. 1986); *Cameron Equipment Co. v. Stewart and Stevenson Services, Inc.*, 685 So.2d 696, 700-01 (La. App. 2d Cir. 1994)(Officers, employees, and agents owe no duties to third parties for their negligent acts and omissions in a commercial context. . . . Absent fraud, shareholders, directors, and officers are not personally liable for the debts of the corporation, especially when they deal with other corporations.  Corporate officers acting within the scope of their corporate duties are not liable in a commercial context to third parties for negligence, mismanagement, breach of fiduciary duty, or for the debts of the corporation); *Korson v. Independence Mall I, Ltd.*, 595 So.2d 1174, 1178 (La. App. 5 Cir. 1992); *Fine Iron Works v. Louisiana World Exposition, Inc.*, 472 So.2d 201, 203 (La. App. 4th Cir.), *writ denied*, 477 So.2d 201 (1985); Glenn G. Morris, *Personal Liability for Corporate Participants Without Corporate Veil-Piercing: Louisiana Law*, 54 La.L.Rev. 207 (1993)(discussing personal liability of corporate participants under various tort and contract theories); *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 231 (La. 1989)(establishing a limited cause of action against corporate officers for intentional interference with a contract while acting intentionally detrimental to the corporation's best interest); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D.La. 2008)(citing numerous cases).

*See also, Alvis v. CIT Group Equipment Financing, Inc.*, 2003-1364 (La. App. 3

to actions that they took within the scope of their duties as officers of BXS and on behalf of BXS,[10] rather than in their *personal* capacities. Moreover, the only allegation indicating that Denison and Singletary acted outside the scope of their duties as officers of BXS is the insufficient, conclusory allegation that their actions "constitute *ultra vires* acts, outside the course of ordinary business." *See*, Paragraph 60 of the Petition.[11] [12]

---

Cir. 3/3/04), 867 So.2d 102 (Louisiana corporation law does impose certain duties on officers and directors; however, those duties are generally considered to be owed to the corporation, rather than to third parties. When officers or directors transact business with third parties in the course and scope of their employment, the law treats them as agents, limiting their personal liability. Thus, under Louisiana law governing mandataries, it is the principal (the corporation) that is liable to third parties, rather than the agent or mandatary (the officer or director). The officer or director is personally liable only in certain limited circumstances. Specifically, the law of agency offers no protection from tort liability when a corporate officer or director commits the tort of fraud or the tort of intentional interference with a contract).

[9] It should be noted that the U.S. Fifth Circuit, in both *Unimobil* and *Fine Iron Works*, considered and rejected the extension of *Canter* beyond the realm of personal physical injury.

[10] Plaintiffs specifically state in a number of their allegations concerning Singletary and Denison that their actions were taken "on behalf of [BXS]" or that they were taken in combination with BXS. *See*, Paragraphs 38, 39, 46, 48, 53, 71, and 72. Moreover, throughout the memorandum in support of their present motion, plaintiffs reference the fact that the alleged wrongful acts of Singletary and Denison were taken on behalf of BXS, thereby indicating that they were acting in their capacities as officers on behalf of BXS when they took the actions, rather than in their personal capacities.

[11] *See, Conerly*, at \*5 ("At no point do plaintiffs allege that [the defendant bank employee] acted outside the scope of his employment, and plaintiffs have not alleged facts indicating that [the defendant bank employee] bound himself personally. Rather, plaintiffs' complaint repeatedly alleges that [the defendant bank employee] is an 'employee or agent' of AmSouth/Regions who acted 'on behalf of AmSouth/Regions.' . . . The only allegation indicating that [the defendant bank employee] acted beyond the scope of his authority or bound himself personally is plaintiffs' statement that [the defendant bank employee] 'breach[ed] . . . an oral contract, both personally and on behalf of AmSouth Bank." That isolated statement was held not to be enough to state a claim against the defendant bank employee under Louisiana law because the plaintiffs were required to allege "specific facts, rather than conclusory allegations." According to

---

the Eastern District of Louisiana, the allegations in *Conerly* "overwhelmingly state[d]" that the defendant bank employee was within the scope of his employment "on behalf of AmSouth Bank" when dealing with the plaintiffs, and AmSouth Bank had admitted as much by joining in the defendant bank employee's motion to dismiss).

Similarly, in the present case, the plaintiffs' allegations "overwhelmingly state" that Singletary and Denison were acting within the scope of their employment with BXS and on behalf of BXS when dealing with the plaintiffs. BXS has admitted same in its notice of removal and in its opposition to the present remand motion. Accordingly, plaintiffs do not have any claim against Singletary or Denison for negligence, mismanagement, or breach of any fiduciary duty.

[12] *Compare, Cagle v. Loyd*, 617 So.2d 592 (La. App. 3d Cir. 1993)(where the estate of a bank manager was held personally liable to customers of the bank for non-fraudulent but negligent conduct which caused financial damage to the customers, where the manager acted in his capacity as an officer of the bank but went beyond the scope of his intended duties. Specifically, the allegations and evidence in that case indicated that the bank manager actually began to run the customers' ranching businesses and that he was liable for his own negligence in the course of running those businesses. The court of appeals agreed with the trial court's conclusion that, in the course of running the plaintiffs' businesses, the bank manager assumed the personal duty to the plaintiffs to run their businesses properly and with the degree of care required by ordinary prudence under the same or similar circumstances, and when he breached that personal duty and caused damages to the plaintiffs, they were entitled to bring an action for negligence against him).

*Cagle* rests upon the well-established principle under Louisiana law that a mandatary who exceeds the scope of his mandate is personally liable for his actions. In the present case, however, plaintiffs have not asserted any specific allegations as to how Singletary and Denison exceeded the scope of their corporate duties as bank officers working on behalf of BXS and began to act in their personal capacities, causing damage to plaintiffs. In *Cagle*, it was apparent that the bank manager had stepped beyond his role as a banking officer and into his personal capacity when he began to manage the plaintiffs' ranching businesses. There is no similar allegation in this case; the alleged wrongful acts of Singletary and Denison (*i.e.*, ignoring the restrictive endorsement on the $250,000 deposit by Matthews and directing that the check be deposited into the New Towne general checking account after seeking the guidance of Old Towne's attorney as to where the deposit should be made, rather than the guidance of Matthews or Shearwater) were all taken as part of their official duties on behalf of BXS. Even assuming the alleged acts of Singletary and Denison were negligent (plaintiffs contend a "prudent bank officer" would have sought instruction from Matthews or Shearwater, rather than a third party, regarding the application of the $250,000 deposit) or constitute a form of mismanagement or a breach of a duty of good faith and

12

Additionally, the claim that plaintiffs are asserting against Denison and Singletary is that they breached an alleged duty of good faith and fair dealing that was owed to plaintiffs.[13]  Although there are no cases on point concerning whether a corporate officer acting within the scope of his corporate duties can be held liable for breach of the duty of good faith and fair dealing, considering that such officers cannot be held liable to third parties in a commercial context for other non-fraudulent breaches (such as negligence, breach of fiduciary duty, or mismanagement), it seems unlikely that they would be held liable for breach of the duty of good faith and fair dealing.

Finally, while plaintiffs have vaguely alleged that the conduct of Denison and Singletary constitutes an "intentional and fraudulent breach of duties," they have not specifically alleged a claim of intentional interference with any contract involving them, nor have they asserted fraud allegations with the particularity required by Fed. R. Civ. P. 856. In particular, they have not alleged how the actions taken by Denison and Singletary (*i.e.*, their purported participation in meetings with the plaintiffs and the Old Towne principals, the alleged deposit of the $250,000 check into the New Towne general checking account, and the assignment of the New Towne note to Old Towne) constitute fraud.

In contrast, BXS has presented evidence indicating that such actions were taken

---

fair dealing (plaintiffs allege Singletary and Denison did not act as "prudent officers" and breached BXS's delegated duty of good faith and fair dealing), Singletary and Denison are not personally liable to third parties for such acts since the acts were taken in the context of their duties as banking officers.  *See, Cameron Equipment*, at 700.

[13] In support of that claim, plaintiffs rely upon *BizCapital Business & Indus. Dev. Corp. v. Union Planters Corp.*, 2003-2208 (La. App. 4 Cir. 2004), 884 So.2d 623, wherein it was held that, although La. R.S. 6:1124 clarifies that a bank does not owe an implied fiduciary duty to its customers, banks nevertheless retain a duty of good faith and fair dealing to their customers.

13

by Denison and Singletary in the scope of their duties as BXS officers and for proper reasons, rather than for fraudulent ones. Specifically, Singletary has submitted an affidavit indicating that, on September 9, 2008, BXS was presented with Check No. 1168, drawn on the BusinessFirst tax account of John Michael and Patricia Burdine, payable to BXS in the amount of $250,000.00. *See*, Exhibit A to BXS's opposition. Singletary indicates that, in the "memo section" of that check, it was written "Shearwater Cash Call Contribution." Additionally, across the top of the back of the check was the notation "To be applied to New Towne Development Group, LLC loan interest - for the account of J. David Matthews, Shearwater Communities, LLC." *Id.* According to Singletary, the $250,000 in funds was originally applied to the loan in accordance with the notation; however, the funds were subsequently transferred to the New Towne general checking account pursuant to an instruction by Engquist (the managing member of New Towne who had the authority to handle New Towne's BXS accounts) that the funds should be transferred to the New Towne general checking account because the funds were for a capital call and not for an interest payment. *Id.*

Singletary further attests that, on September 10, 2008, the amount due on the New Towne note was $12,749,099.94, of which amount $749,099.94 was accrued interest. Singletary therefore indicates that, even if the $250,000 check had been applied to the interest due on the loan, as requested by Matthews, the funds would not have been sufficient to pay the accrued interest on the loan, much less the total amount due on the loan, and New Towne still would have defaulted on the loan. *Id.* Accordingly, considering the evidence submitted by BXS, it appears that, even if Singletary and/or Denison improperly deposited the funds into the New Towne general checking account, plaintiffs

14

would not be entitled to any recovery under their theory in this case (*i.e.*, plaintiffs' theory is that the alleged improper actions of Denison and Singletary caused the default on the New Towne note, which then allowed Old Towne to purchase that note and thereby deprive Matthews and Shearwater of their rights in the Americana project).

With respect to the assignment of the New Towne note to Old Towne, Singletary explains that, on September 15, 2008, BSX, through its counsel, notified New Towne and the guarantors on the New Towne note that they were in default on the note due to their failure to make the required payments on the loan by the maturity date. *Id.* At that time, BXS requested that New Towne and/or the guarantors make an immediate payment of $12,755.666.66, plus per diem interest of $1,666,67. *Id.* BXS did not receive the requested funds, and according to Singletary, in order to meet the bank's fiduciary obligations to its shareholders, BXS assigned the promissory note to Old Towne in exchange for a payment of $12,774,099.99. *Id.* Singletary contends that such assignment was necessary as part of BXS's fiduciary duty to its shareholders because "[i]f any loan issued by [BXS] goes into default it becomes a classified credit, which means that [BXS] must increase the reserves associated with the loan under applicable banking regulations." Singletary explains that "a loan in default would go from a performing loan to a non-performing loan if allowed to remain in default which could result in a reduction in the value of shares for [BXS]'s shareholders . . . [and] BXS is obligated to its shareholders to take reasonable actions, such as selling the loan package and taking other actions to keep the loan in a performing status, in an effort to minimize the potential negative impact on bank assets and shareholder equity." *Id.*

BXS correctly argues that there is nothing in Louisiana law or the promissory note

15

itself that prohibited the New Towne note from being assigned to Old Towne. *See*, La. C.C. art. 2642 ("All rights may be assigned, with the exception of those pertaining to obligations that are strictly personal"); Exhibit 5 to plaintiffs' motion to remand, R. Doc. 4-4, pp. 59 (BXS may assign its rights under the guaranty agreements relating to the New Towne note without the guarantor's consent). Moreover, because BXS and its officers only have a fiduciary duty toward the bank's shareholders, the assignment of the New Towne note was a "reasonable step" designed to ensure that the $12 million was recovered.[14]

Finally, BXS has also correctly argued that there is no reasonable basis for predicting that plaintiffs will be able to recover from Denison and Singletary on the claim that they participated in a conspiracy to aid the Old Towne principals in breaching their fiduciary duty to the plaintiffs. La. C.C. art. 2324 regarding liability for conspiracies is limited to conspiracies involving tortious conduct and does not extend to alleged breaches of fiduciary duty.[15]

Accordingly, it appears that Singletary and Denison have been improperly joined as

---

[14] *See*, La. R.S. 6:1124 ("No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary").

[15] *See, Louisiana v. Guidry*, 489 F.3d 692, 706-707 (5th Cir. 2007)("Even after the revision of article 2324, Louisiana courts continue to recognize that its application is limited to conspiracies involving tortious conduct . . . We therefore affirm the district court's summary judgment dismissal of the State's cause of action for [defendant]'s conspiracy to breach the fiduciary duty of another, as "lack[ing] an essential element - an underlying tort." The Fifth Circuit specifically recognized that an action for breach of fiduciary duty arises from the special relationship between a fiduciary and the one who claims the duty [or "principal"] and therefore arises in contract (or quasi-contract), rather than tort).

defendants in this lawsuit.  Their non-diverse citizenship should therefore be ignored for purposes of determining whether diversity jurisdiction exists, and plaintiffs' motion to remand should be denied because complete diversity of citizenship exists when the citizenship of Singletary and Denison is disregarded.  Because the undersigned is able to issue a recommendation relative to Matthews' motion to remand based upon the written briefs of the parties, Matthews' motion for oral argument should also be denied.

## **RECOMMENDATION**

For the above reasons, it is recommended that the Motion to Remand (R. Doc. 4) and the Motion for Oral Argument (R. Doc. 6) filed by plaintiff, J. David Matthews, should be **DENIED** and that the defendants, Larry Denison and Scott Singletary, should be ignored.

Signed in chambers in Baton Rouge, Louisiana, January 25, 2010.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**